**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on September 1, 2021, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated: September 1, 2021**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| DOUGLAS K. BALDWIN, | ) | Case No. 20-12300 |
|     Debtor. | ) | |
| | ) | Judge Arthur I. Harris |
| | ) | |
| SHELDON STEIN, CHAPTER 7 | ) | |
| TRUSTEE, | ) | |
|     Plaintiff. | ) | Adversary Proceeding |
| | ) | No. 21-1014 |
| v. | ) | |
| | ) | |
| DOUGLAS K. BALDWIN, *et al.*, | ) | |
|     Defendants. | ) | |

MEMORANDUM OF OPINION[1]

On February 27, 2021, the plaintiff-Chapter 7 trustee Sheldon Stein filed this adversary proceeding seeking (1) a determination as to the nature, extent, and priority of liens on the property located at 17112 Hawks Lookout Lane,

---

[1] This Opinion is not intended for official publication.

Strongsville, OH 44136 ("the property"), (2) a finding that the debtor's claim of exemption in the property is subordinate to the tax lien of the United States, and (3) authorization to sell both the debtor's interest in the property and that of his non-filing spouse pursuant to 11 U.S.C. § 363(h). This adversary proceeding is currently before the Court on the Chapter 7 trustee's motion for summary judgment. As explained more fully below, while the Chapter 7 trustee is entitled to revoke the revocable trust held by the debtor and his non-filing spouse, thereby bringing the debtor's half-interest in the property into the debtor's estate, and while the Chapter 7 trustee can subordinate the federal tax lien on the debtor's half-interest in the property for the benefit of certain administrative expenses under 11 U.S.C. § 724(b), the Chapter 7 trustee has failed to demonstrate that any proposed sale of the debtor's property will result in a meaningful distribution to unsecured creditors. The Chapter 7 trustee has also failed to demonstrate that the benefit to the estate of a sale of such property free of the interests of the debtor's non-filing spouse outweighs the detriment to the debtor's non-filing spouse. Accordingly, the Chapter 7 trustee's motion for summary judgment is denied.

## JURISDICTION

This Court has jurisdiction over this action. Proceedings to determine the validity, extent, or priority of liens are core proceedings under 28 U.S.C.

2

§ 157(b)(2)(K). Proceedings to approve the sale of property are core proceedings under 28 U.S.C. § 157(b)(2)(N). This Court has jurisdiction over core proceedings under 28 U.S.C. §§ 157(a) and 1334 and Local General Order No. 2012-7, entered by the United States District Court for the Northern District of Ohio.

## BACKGROUND

Unless otherwise indicated, the facts described below are not in dispute. On November 18, 2011, the debtor and his non-filing spouse established the Baldwin Revocable Trust (the "Trust"). (Adv. No. 21-1014, Docket No. 23, Ex. 2). Through execution of a trust agreement, the debtor and spouse named themselves as the joint settlors, trustees, and beneficiaries. (*Id.*). On November 29, 2011, the non-filing spouse transferred ownership of the property to the Trust. (Adv. No. 21-1014, Docket No. 27, Ex. 1).

On May 6, 2020, the debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. (Case No. 20-12300, Docket No. 1). On Schedule C, the debtor claimed an exemption of $220,000 in the property. (*Id.*). On June 20, 2020, the Chapter 7 trustee objected to the debtor's claim of exemption, arguing the debtor did not have an ownership interest in the real estate because it was held in trust and therefore, could not claim an exemption. (Case

3

No. 20-12300, Docket No. 19). On July 22, 2020, the Court sustained the objection. (Case No. 20-12300, Docket No. 35).

On or about June 25, 2020, the Chapter 7 trustee, standing in the shoes of the debtor, revoked the Trust in accordance with Article Three, Paragraph D of the trust agreement. (Case No. 20-12300, Docket No. 53). The Chapter 7 trustee contends the revocation vests one-half ownership interest in the property to the debtor, and thus the property is subject to control of the bankruptcy estate. (Adv. No. 21-1014, Docket No. 23). On October 6, 2020, the debtor filed an amended Schedule C claiming an exemption of $95,900 in the property under Ohio Rev. Code § 2329.66(A)(1). The Chapter 7 trustee has not timely objected to the debtor's amended claim of exemption under Bankruptcy Rule 4003(b)(1). On August 19, 2020, the debtor received a discharge.

A lien search conducted at the request of the Chapter 7 trustee on January 29, 2021, revealed the following liens securing debts jointly owed by the debtor and his non-filing spouse:

- A 1992 first mortgage on the property assigned to Towd Point Master Funding Trust 2015-LM4 with an outstanding balance of $64,988.13 as of the petition date, according to the debtor's schedules;

- A federal tax lien filed August 4, 2017, with an outstanding balance of $63,915.97 as of the petition date, according to the United States' proof of claim; and

4

- A judgment lien (No. 19-895473) filed on July 25, 2019, in favor of the State of Ohio Department of Taxation in the amount of $10,130.37 according to the report prepared for the Chapter 7 trustee.

*See* (Adv. No. 21-1014, Docket No. 23, Ex. 3). The report prepared for the Chapter 7 trustee also identified any unpaid property taxes as an additional lien on the property.

On February 21, 2021, the Chapter 7 trustee initiated this adversary proceeding seeking (1) a determination of the nature, extent, and priority of liens on the property, (2) a finding that the debtor's claim of exemption in the property cannot be paid until the federal tax lien is paid in full, and (3) authorization to sell the entire property free and clear of all liens, encumbrances, and interests, transferring legitimate claims to the sale proceeds for later distribution. (Adv. No. 21-1014, Docket No. 1).

On May 30, 2021, the Chapter 7 trustee filed a motion for summary judgment. (Adv. No. 21-1014, Docket No. 23). On June 21, 2021, the debtor and his non-filing spouse filed a response in which they argue that the Chapter 7 trustee did not have authority to revoke the Trust, and even if he did, the revocation would vest 100 percent of the property in the non-filing spouse because she was the sole grantor of the property to the trust. (Adv. No. 21-1014, Docket No. 27). Further,

5

the debtor and his non-filing spouse contest the timely filing of the tax claims and the accuracy of the method used to determine them. (*Id.*).

On July 13, 2021, the Court held a status conference. The Court indicated that it would defer ruling on the motion for summary judgment until after August 2, 2021, to give the parties an opportunity to consider a possible consensual resolution.

SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 was amended in 2010; however, "[t]he commentary to Rule 56 cautions that the 2010 amendments were not intended to effect a substantive change in the summary-judgment standard." *Newell Rubbermaid, Inc. v. Raymond Corp.,* 676 F.3d 521, 533 (6th Cir. 2012). "A court reviewing a motion for summary judgment cannot weigh the evidence or make credibility determinations." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569 (6th Cir. 2012) (citation omitted). "Instead, the evidence must be viewed,

6

and all reasonable inferences drawn, in the light most favorable to the non-moving party." *Id.* at 570.

## DISCUSSION

The Chapter 7 trustee's motion for summary judgment raises a number of issues, including the power to revoke a trust created for the benefit of the debtor, the timeliness of proofs of claim, whether the debtor's exemption is paid ahead of the tax lien and other secured claims, the operation of 11 U.S.C. § 724, whether it is appropriate for the Chapter 7 trustee to sell estate property that will not result in a meaningful distribution to unsecured creditors, and whether the benefit to the estate outweighs the detriment to co-owners when considering a sale of the co-owner's interest under 11 U.S.C. § 363(h).

*Chapter 7 Trustee's Revocation of the Trust Brings the Debtor's Half Interest in the Property into the Debtor's Estate*

When a debtor files a bankruptcy petition, "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the bankruptcy estate including those powers the debtor may exercise for his own benefit. 11 U.S.C. § 541(a)(1), (b)(1); *In re Marrama*, 316 B.R. 418, 423 (B.A.P. 1st Cir. 2004) ("Section 541(b)(1)'s exclusion of 'any power that the debtor may exercise solely for the benefit of an entity other than the debtor' plainly implies that the bankruptcy estate includes a power that the debtor may exercise for

7

his own benefit"). "Thus, what comes to the bankruptcy estate is not only the property in which debtor has an interest, but also, the powers the debtor can exercise for its own benefit over property regardless of the title debtor may be acting under." *In re Allen*, 415 B.R. 310, 316 (Bankr. N.D. Ohio 2009). Specifically, courts have recognized a bankruptcy trustee's authority to revoke a trust when the debtor held that power at the commencement of the case and the debtor is a beneficiary of the trust. *E.g.*, *Askanase v. LivingWell, Inc.*, 45 F.3d 103, 106 (5th Cir. 1995) ("any interest a debtor retains in trust is property of the estate, including the power to amend the trust and the power to revoke a revocable trust and recover the remaining funds in the trust for the benefit of the creditors"); *In re Woods*, 422 B.R. 102, 108 (Bankr. W.D. Ky. 2010) (debtor's power to revoke trust and debtor's beneficial interest in trust are property of the estate under 11 U.S.C. § 541); *see also Allen*, 415 B.R. at 316 (bankruptcy trustee can "stand in the debtor's shoes" and exercise legal and contractual rights held by the debtor at the commencement of the case).

In this case, the debtor is both a trustee and beneficiary of the trust. (Docket No. 23, Ex. 2, Article 1 Section B, Section J). As a trustee, the debtor had the ability to revoke the trust at the commencement of the case. (Docket No. 23, Ex. 2, Article 3 Section D). Upon filing, the debtor's power to revoke the trust became

8

property of the bankruptcy estate and could be exercised by the Chapter 7 trustee because the debtor is a beneficiary of the trust. The Court holds that, the Chapter 7 trustee's revocation of the trust on June 25, 2020, is valid.

The debtor argues that once the trust was revoked, the entire property interest was vested in the non-filing spouse because she was the sole grantor of the property into trust. (Docket No. 27, Ex. 1). However, the trust agreement states it shall be governed by the laws of the State of Ohio. (Docket No. 23, Ex. 2). Under Ohio law, "[u]pon revocation of a revocable trust, the trustee shall deliver the property as the settlor directs." 58 Ohio Rev. Code § 5806.02(D) (2008). Therefore, the property is administered according to the terms of the trust agreement. Article 3, Section D of the trust agreement states,

> "During our joint lifetimes this trust may be revoked by either of us by an instrument in writing, signed by at least one of us, and delivered to the other of us and all acting trustee(s) (who may be either or both of us), in which case an undivided one-half interest in the trust property shall be distributed to each of us."

(Docket No. 23, Ex. 2). Thus, under the terms of the trust agreement, when the Chapter 7 trustee exercised the debtor's power to revoke the trust, ownership in the property did not revert back to the non-filing spouse. Rather, ownership in the property was divided between the debtor and the non-filing spouse, with each receiving an undivided one-half interest.

9

*Timeliness of Claims of the United States and the State of Ohio*

The debtor contends that the proofs of claim filed by the United States and the State of Ohio are untimely. However, the debtor has not objected to either proof of claim in the manner required under Bankruptcy Rule 3007. Absent an objection filed under Bankruptcy Rule 3007, such claims are deemed allowed claims. *See* 11 U.S.C. § 502(a).

Under 11 U.S.C. § 502(b)(9), "a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide."

Federal Rule of Bankruptcy Procedure 3002(c)(5) provides in relevant part,

> If notice of insufficient assets to pay a dividend was given to creditors under Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall give at least 90 days' notice by mail to creditors of that fact and of the date by which proofs of claim must be filed.

Fed. R. Bankr. P. 3002(c)(5). In the present case, creditors were initially asked not to file claims because it appeared the debtor did not have any property to liquidate. (Case No. 20-12300, Docket No. 6). After the Chapter 7 trustee filed a notice of assets, the Court issued a notice directing that claims be filed by October 2, 2020. (Case No. 20-12300, Docket No. 26). Governmental units therefore had until the later of 180 days from the petition date of May 6, 2020—*i.e.*, November 2, 2020—

or October 2, 2020, the deadline for all creditors to file claims under Bankruptcy Rule 3002(c)(5).  The United States did not file its proof of claim until March 1, 2021 (Case No. 20-12300, Claim No. 5-1), and the Ohio Department of Taxation did not file its proof of claim until April 13, 2021.  (Case No. 20-12300, Claim No. 6-1).

While § 726 of the Bankruptcy Code places tardily filed general unsecured claims in a category behind timely filed general unsecured claims, *see* 11 U.S.C. § 726(a)(3), it does not appear that tardily filed secured claims share the same treatment.  *See* 11 U.S.C. § 506(d); Bankruptcy Rule 3002(a) ("A lien that secures a claim against the debtor is not void due only to the failure of any entity to file a proof of claim.").  *Cf.* 11 U.S.C. § 726(a)(1) (tardily filed priority claims retain their priority status so long as the claim is filed before the trustee is prepared to make a final distribution to creditors).  Thus, the fact that the claims of the United States and the Ohio Department of Taxation were tardily filed should not affect the Chapter 7 trustee's ability to pay these claims to the extent that they are secured.  It should be noted, however, that the Ohio Department of Taxation's proof of claim is filed as a nonpriority, general unsecured claim, not a secured claim.  To the extent that it is properly only a general unsecured claim, it would not be paid until all general unsecured claims have been paid in full.  11 U.S.C. § 726(a)(3).

11

*Subordination of Debtor's Exemption under 11 U.S.C. § 522(c)(2)(B)*

Section 522(c)(2)(B) of the Bankruptcy Code provides, in pertinent part:

(c) Unless the case is dismissed, property exempted under this section
is not liable during or after the case for any debt of the debtor that
arose, or that is determined under section 502 of this title as if such
debt had arisen, before the commencement of the case, except—
. . .
(2) a debt secured by a lien that is—
. . .
(B) a tax lien, notice of which is properly filed[.]

11 U.S.C. § 522 (c)(2)(B); *In re Zydonis*, No. 14-10044, 2014 WL 3429131, at *1

(Bankr. N.D. Ohio July 12, 2014) ("the debtor does not get the benefit of an

exemption for property encumbered by a tax lien"); *In re Deppisch*, 227 B.R. 806,

809 (Bankr. S.D. Ohio 1998) ("even property exempted will remain subject to a

tax lien pursuant to § 522 (c)(2)(B)").  Therefore, a properly filed tax lien will be

paid before a debtor's exemption in the property.  *In re Laredo*, 334 B.R. 401, 415

(Bankr. N.D. Ill. 2005); *In re Bolden*, 327 B.R. 657, 662–63 (Bankr. C.D. Cal.

2005).

Here, the United States' claim of $63,915.97 comes before the debtor's

claimed exemption of $95,900 in the property.  Any judgment lien would also be

paid ahead of the debtor's exemption unless the debtor moved successfully to

avoid the judgment lien under § 522(f).  As noted earlier, the Ohio Department of

12

Taxation's proof of claim does not assert that its claim is secured or entitled to priority.

*Subordination of Tax Liens under 11 U.S.C. § 724(b)*

The Chapter 7 trustee seeks to subordinate the United States' tax lien under 11 U.S.C. § 724(b). This subsection provides in relevant part:

> (b) property in which the estate has an interest and that is subject to a lien that is not avoidable under this title (other than to the extent that there is a properly perfected unavoidable tax lien arising in connection with an ad valorem tax on real or personal property of the estate) and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—
>
>> (1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;
>>
>> (2) second, to any holder of a claim of a kind specified in section 507(a)(1)(C) or 507(a)(2) (except that such expenses under each section, other than claims for wages, salaries, or commissions that arise after the date of the filing of the petition, shall be limited to expenses incurred under this chapter and shall not include expenses incurred under chapter 11 of this title), 507(a)(1)(A), 507(a)(1)(B), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;
>>
>> (3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

13

(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

(6) sixth, to the estate.

11 U.S.C. § 724(b). Subordination under § 724(b) applies to real and personal property but should only be used as a last source of payment. 6 Collier on Bankruptcy ¶ 724.LH (16th ed. 2021). The 2005 Act added subsection (e) which requires the Chapter 7 trustee to "exhaust the unencumbered assets of the estate" and recover any funds available under § 506(c) prior to invoking § 724(b). 11 U.S.C. § 724(e).

In *In re Darnell*, 834 F.2d 1263, 1266–67 (6th Cir. 1987), the Sixth Circuit explained the priority distribution required by § 724(b). First, liens that are "senior" to tax liens, such as a mortgage, are paid. *Id.* Second, priority claims specified in § 507(a)(1)–(6) are paid up to the amount of the tax lien. Third, any remaining portion of the tax lien not used to cover the priority claims in § 724(b)(2) is paid. Fourth, liens that are "junior" to the tax lien, such as judgment liens, are paid. Fifth, the amount of the unpaid tax lien under § 724(b)(3) is paid. Sixth, any remaining funds go to the estate.

14

Here, the Chapter 7 trustee fulfills the requirement to exhaust all other assets because the debtor does not have any other assets for the Chapter 7 trustee to recover funds from. Should the Chapter 7 trustee be permitted to sell both the debtor's half interest and the non-filing spouse's half interest of the property, proceeds from the sale would first be used to pay the costs of the sale and real estate taxes. The remaining funds would be divided evenly between the debtor's estate and the non-filing spouse. For the non-filing spouse, half of the balance secured by the mortgage, half of the balance due for any property taxes, half of the balance secured by the United States' tax lien, and half of the balance secured by any judgment lien would also be deducted from the non-filing spouse's share of the proceeds funds from the sale.

For the debtor's estate, the distribution would follow the order specified under § 724(b). First, the debtor's half of the balance secured by the mortgage and the debtor's half of the balance due for any property taxes would be paid because these debts are senior to the United States' tax lien. § 724(b)(1). Second, qualifying administrative expenses would be paid up to the amount of the debtor's half of the United States' tax lien. § 724(b)(2). Third, the remaining portion of the United States' tax lien not used to cover the administrative costs in step two would be paid. § 724(b)(3). Fourth, the debtor's half of any judgment lien would be paid.

15

§ 724(b)(4). Fifth, any amount of the United States' tax lien not paid under step three would be paid. § 724(b)(5). Sixth, any remaining proceeds from the sale would go to the debtor's estate, to be paid to creditors under § 726, but subject to the debtor's claim of exemption in the amount of $95,900. § 724(b)(6).

An important aspect of § 724(b) is that only certain administrative and priority claims are entitled to be paid from the subordinated tax lien. These include certain administrative expense claims as well as certain priority unsecured claims through the seventh priority under § 507. Unsecured claims entitled to priority under § 507(a)(8), (9), and (10) as well as general unsecured claims are not entitled to be paid from the subordinated tax lien. *See* 11 U.S.C. § 724(b)(2); *see also, e.g.*, *In re Laredo*, 334 B.R. at 411. Nor has the Chapter 7 trustee included in this adversary proceeding any cause of action to avoid the penalty portion of the debtor's half of the tax lien under §§ 724(a) and 551, which could potentially make that portion of the tax lien available for the benefit of general unsecured creditors. *See Internal Revenue Serv. v. Baldiga, Trustee of Estate of Hannon*, 619 B.R. 524 (D. Mass. 2020); *In re Hutchinson*, 615 B.R. 596 (E.D. Cal. 2020), *vacated on other grounds*, *United States v. Hutchinson*, No. 20-16331, 2020 WL 5551702, (9th Cir. Sept. 15, 2020).

16

In the present case, only six proofs of claim have been filed. Five claims, including the claim of the Ohio Department of Taxation, assert only general unsecured claims totaling $25,818.94. The sixth claim is the secured claim of the United States, which includes only a secured claim, with no separate unsecured amounts, either priority or general unsecured. Therefore, the only claims entitled to payment from the tax lien, other than the secured tax claim, would be allowed administrative expenses from this case. Presumably, these would consist mostly of compensation for Chapter 7 trustee and reasonable attorney's fees for the Chapter 7 trustee's attorney under § 330. Priority and general unsecured creditors would receive nothing.

To assist the parties in understanding the Court's analysis, the Court offers the following hypothetical distribution, assuming the Court were to authorize the sale of the entire property under § 363(h).

Assumptions:

- The property sells for $260,000.
- Costs of sale, such as title work and real estate commission, are $20,000.
- Unpaid property taxes are $4,000.
- The balance due on the first mortgage, including accrued interest, is $66,000.
- The balance due on the United States' tax lien, including accrued interest, is $66,000.
- The balance due on the Ohio Department of Taxation's judgment lien is $12,000.

- Allowed administrative expenses, including a Chapter 7 trustee commission and reasonable attorney's fees for the Chapter 7 trustee's attorney, total $24,000.

The non-filing spouse's share of the net proceeds would be calculated as

follows:

| | |
|---|---|
| Half of gross proceeds. | $130,000 |
| Minus half the costs of sale. | $10,000 |
| Minus half the costs of unpaid property taxes. | $2,000 |
| Minus half the balance due on the first mortgage. | $33,000 |
| Minus half the balance due on the United States' tax lien. | $33,000 |
| Minus half the balance due on the Ohio Department of Taxation's judgment lien. | $6,000 |
| Net proceeds to non-filing spouse. | $46,000 |

The debtor's estate's share of the net proceeds would be distributed as

follows:

| | |
|---|---|
| Half of gross proceeds. | $130,000 |
| Minus half the costs of sale. | $10,000 |
| Minus half the costs of unpaid property taxes as senior to the tax lien.  § 724(b)(1) | $2,000 |
| Minus half the balance due on the first mortgage as senior to the tax lien.  § 724(b)(1) | $33,000 |
| Minus allowed administrative expenses.  § 724(b)(2) | $24,000 |
| Minus amount of debtor's half of United States' tax lien not used as a result of allowed administrative expenses.  § 724(b)(3) | $9,000 |
| Minus half the balance due on the Ohio Department of Taxation's judgment lien.  § 724(b)(4) | $6,000 |
| Minus the remaining balance under the debtor's half of the United States' tax lien, $24,000.  § 724(b)(5) | $24,000 |
| Net proceeds to the debtor's estate, subject to the debtor's claim of exemption of $95,000.  § 724(b)(6) | $22,000 |

Thus, the balance of $22,000 would go back to the debtor.  Priority and

general unsecured creditors would receive nothing.  The only parties to be paid

18

would be secured creditors and holders of administrative claims—principally, the

Chapter 7 trustee and the Chapter 7 trustee's attorney.

*Sale of Estate Property That Does Not Result in a Meaningful Distribution to Unsecured Creditors*

"As a general rule, the bankruptcy court should not order property sold 'free

and clear of' liens unless the court is satisfied that the sale proceeds will *fully*

compensate secured lienholders *and* produce some equity for the benefit of the

bankrupt's estate." *In re Riverside Inv. P'ship*, 674 F.2d 634, 640 (7th Cir. 1982)

(emphasis added) (citing *Hoehn v. McIntosh*, 110 F.2d 199, 202 (6th Cir. 1940)).

> A Chapter 7 trustee is responsible for liquidating the estate and using the proceeds to satisfy the debtor's unsecured creditors. *See generally* 11 U.S.C. §§ 704 & 726. This power to liquidate property of the estate, however, "will not be exercised unless it is made to appear that there is a fair prospect of the property being sold for substantially more than enough to discharge the lien or liens upon it." *Hoehn v. McIntosh*, 110 F.2d at 202. The Chapter 7 trustee, in other words, must generally abandon property that does not possess substantial equity. *See In re Feinstein Family P'ship*, 247 B.R. 502, 507 (Bankr. M.D. Fla. 2000).

*In re Burke*, 863 F.3d 521, 525 (6th Cir. 2017). *Accord In re Bird*, 577 B.R. 365

(10th Cir. BAP 2017) ("In certain situations, such as when liquidation will result in

little to no payment to the unsecured creditors, the proper course of action is for a

trustee to abandon the property pursuant to § 554."); *In re KVN Corp.,* 514 B.R. 1

(B.A.P. 9th Cir. 2014); *In re Scimeca Found., Inc.*, 497 B.R. 753 (Bankr. E.D. Pa.

2013); U.S. Dep't of Justice, Exec. Office for U.S. Trs., Handbook for Chapter 7

19

Trustees 4–16 (2012) ("Generally, a trustee should not sell property subject to a security interest unless the sale generates funds for the benefit of unsecured creditors. A secured creditor can protect its own interests in the collateral subject to the security interest."); *cf. Brown v. Ellman*, 851 F.3d 619, 625 (6th Cir. 2017) (declining to consider amicus argument based on *Hoehn* because the debtor failed to raise it before the bankruptcy court); *In re K.C. Mach. & Tool Co.*, 816 F.2d 238 (6th Cir. 1987) (permitting trustee to administer asset subject to an approximately $156,000 tax lien that could be used to pay existing Chapter 11 administrative claim holders under § 724(b)). It is important to note that in *K.C. Machine*, there were existing Chapter 11 administrative claim holders who could benefit from the subordination of the $156,000 tax lien under the version of § 724(b) applicable at that time. In the current case, however, the only administrative and priority creditors who might benefit from the subordination of the tax lien appear to be the Chapter 7 trustee and the Chapter 7 trustee's attorney for work in administering this asset.

To the extent that the bankruptcy court in *Laredo* held that it was appropriate to administer an asset under § 724(b) solely for the benefit of secured creditors and administrative expense claims associated with the sale of the property, this Court respectfully disagrees. Rather, this Court maintains that such a sale must benefit

20

someone other than just secured creditors and the holders of administrative claims arising from the trustee's efforts to sell the property. The other creditors could hold administrative claims unrelated to the sale of the property like the Chapter 11 administrative claim holders in *K.C. Machine*. Or the sale could free up other encumbered property for the benefit of unsecured creditors.

In the present case, it appears that the claims of secured creditors, coupled with the debtor's homestead exemption, would leave nothing for priority or general unsecured creditors, even if the Chapter 7 trustee were permitted to sell the entire property, including the interest of the non-filing spouse. Nor would the subordination of the tax lien under § 724(b) benefit anyone but the holders of administrative claims—principally, the Chapter 7 trustee and the Chapter 7 trustee's attorney.

When a Chapter 7 trustee avoids a lien under the Chapter 5 avoiding powers, the lien is preserved for the benefit of the entire estate. 11 U.S.C. § 551. For example, if the Chapter 7 trustee avoids a lien securing a vehicle owned by the debtor, the vehicle can be sold with the proceeds benefiting all creditors, including general unsecured creditors, provided the net proceeds are sufficient.

Subordination under § 724(b) is different. Only certain administrative expenses and certain priority claims are entitled to be paid ahead of the

21

subordinated tax lien. In the current case, there are no priority claims entitled to be paid under § 724(b)(2). If other secured claims, either more senior or more junior than the tax lien, leave no equity available for distribution to unsecured creditors, then only secured creditors and certain administrative claim holders are likely to benefit from the sale of such property. And while the administrative expenses and subordinated tax claim are not subject to the debtor's claim of exemption of $95,900, any equity remaining in the debtor's property would still be subject to the $95,900 exemption. Nor has the Chapter 7 trustee asserted a cause of action in this adversary proceeding seeking to avoid the penalty portion of the debtor's half of the tax lien under § 724(a), which presumably could be preserved for the benefit of the estate under § 551. *See Baldiga*, 619 B.R. 524; *see also Hutchinson*, 615 B.R. 596.

The facts of this case are different from those in the case of *In re Ellen Riehle*, Case No. 18-15754 (Bankr. N.D. Ohio), which also involved application of § 724(b). In *Riehle*, the Chapter 7 trustee objected the debtor's claim of exemption in a 401(k) plan with a value of about $250,000. The debtor's property was subject to a tax lien of about $43,000. The United States also had an allowed priority tax claim of about $213,000. The Chapter 7 trustee therefore anticipated that the net proceeds from the liquidation of the debtor's 401(k) plan would provide a

22

meaningful distribution to priority unsecured creditors. As it turned out, the administrative costs in litigating the exemption and other issues did not leave any money for distribution to priority unsecured creditors despite an expectation of such a distribution when the Chapter 7 trustee sought to administer the asset. As the Sixth Circuit recently noted in an unpublished decision:

> [A]bandonment is a commonsensical inquiry, requiring courts to look beyond whether the property has "present *value* [for] the estate," and to consider also whether "administration of the property will *benefit* the estate," in any way. [*K.C. Machine*], 816 F.2d at 245; *accord* 11 U.S.C. § 554(b) ("[T]he court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value *and* benefit to the estate." (emphasis added))[.]

*Coslow v. Reisz*, 811 F. App'x 980, 984 (6th Cir. 2020).

In the present case, the Chapter 7 trustee has failed to demonstrate that the proposed sale of the property is likely to result in a meaningful distribution to unsecured creditors.

### *Authorization to Sell Property under 11 U.S.C. § 363(h)*

Although the Chapter 7 trustee has failed to demonstrate, for purposes of summary judgment, that any proposed sale would result in a meaningful distribution to unsecured creditors, the Court will nevertheless examine the Chapter 7 trustee's request for authorization to sell the non-filing spouse's interest in the property.

23

Section 363 of the Bankruptcy Code provides in relevant part:

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

> (1) partition in kind of such property among the estate and such co-owners is impracticable;

> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).  Before analyzing the four elements of § 363(h), a threshold requirement must be addressed.  Section 363(h) refers to "the interest . . . in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety."  *Id.*  Legislative history explains that the rule was changed to allow the Chapter 7 trustee to sell property with co-ownership interests without changing the form of ownership upon transfer to the bankruptcy estate.  *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. at 177, *reprinted in* 1978 U.S.Code Cong. & Ad.News at 5787,

24

6137. The Court concludes this provision is not construed as a restricting factor but rather is used to define circumstances where the Chapter 7 trustee's powers are enhanced. *In re Brown*, 33 B.R. 219, 223 (Bankr. N.D. Ohio 1983). The debtor's interest as it was at the commencement of the case is what is transferred to the estate; there is no severance or alteration of the property interest and its related powers simply because the Chapter 7 trustee can now exercise it. *Brown*, 33 B.R. at 223. In this case, the property was held in trust at the commencement of the case, and the debtor held a one-half beneficial interest as one of two beneficiaries. Further, the debtor's power to revoke the trust established a tenancy in common between the debtor and his non-filing spouse. Thus, the threshold requirement is satisfied, and the Chapter 7 trustee can sell the interest of the non-filing spouse if the remaining requirements of § 363(h)(1)–(4) are met.

The Chapter 7 trustee bears the burden of showing that a sale is proper by proving all four elements of § 363(h). *E.g.*, *Bell v. McLemore*, 347 F. Supp.3d 362, 368 (M.D. Tenn. 2018). *In re Ziegler*, 396 B.R. 1, 3 (Bankr. N.D. Ohio 2008). The Court will briefly address the first three elements.

First, the Chapter 7 trustee must show that partition in kind between the debtor and the non-filing spouse is impractical. "Where property is a single-family residence, there is no practical manner of partition other than a sale and division of

25

the proceeds." *Bell*, 347 F. Supp.3d at 366; *In re Harlin*, 325 B.R. 184, 190

(Bankr. E.D. Mich. 2005) (finding partition of a marital residence is

impracticable).

Second, establishing whether a "sale of the bankruptcy estate's undivided

interest would realize significantly less for the estate than a sale free of the

co-owner's interest" is usually a low bar to meet.  The Court acknowledges the

reasoning set forth in *Ziegler*:

> It is generally accepted that the sale of a bankruptcy estate's
> undivided interest will generate substantially less than the sale of the
> property free of each owner's interest because of the chilling effect
> that the sale of the undivided interest usually has on prospective
> purchasers of the property.

*Ziegler*, 396 B.R. at 4; *In re Kelley*, 304 B.R. 331, 338 (Bankr. E.D. Tenn. 2003)

(finding even though the trustee provided minimal evidence in support for her

argument it was still evident she would realize a higher sale price for the entire

property than she would for the sale of an undivided one-half interest); *see also*

*In re Kebe*, 469 B.R. 778, 795–96 (Bankr. S.D. Ohio 2012).  On the other hand, the

Chapter 7 trustee would presumably not meet the requirement of § 363(h)(2) if sale

of the entire property were unlikely to generate anything for the benefit of

unsecured creditors.

26

Third, the property cannot be "used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power." Thus, the first and third elements are not in dispute because the property is a single-family residence.

The fourth element requires the Chapter 7 trustee to establish that the sale of the property would benefit the estate more than it would harm the non-filing spouse. To establish a prima facie case, the Chapter 7 trustee must prove that the sale would enable the Chapter 7 trustee to reduce or eliminate unsecured claims. *In re Coletta Bros. of N. Quincy, Inc.,* 172 B.R. 159, 165 (Bankr. D. Mass. 1994) (finding initial burden can be met by showing that "the estate's share of the net proceeds would exceed existing liens on the debtor's interest in the property"); *In re Thomas*, No. 17-25100-L, 2018 WL 10731606, at *9 (Bankr. W.D. Tenn. Sept. 27, 2018). To accurately determine benefit to the estate, evidence of the valuation of the property, existing liens, and related sale costs must be provided. *Kebe*, 469 B.R. at 796–98. Once satisfied, the burden shifts to the defendant to prove the detriment to the co-owner outweighs the benefit to the estate. *Kelley*, 304 B.R. at 339. Detriment has been defined as "economic hardship, as well as any loss, harm, injury or prejudice resulting from the involuntary displacement." *In re DeRee*, 403 B.R. 514, 523 (Bankr. S.D. Ohio 2009); *Kelley*, 304 B.R. at 339 (court may

27

consider both economic and non-economic factors to determine detriment). Yet, the defendant must actually provide evidence of detriment to overcome the benefit to the estate. *Kelley*, 304 B.R. at 339 ("[w]ithout specific evidence, the court can only analyze possible detriment, which is not sufficient to outweigh benefit to the estate"); *Bell*, 347 F. Supp.3d at 368; *In re Phillips*, 379 B.R. 765, 796–97 (Bankr. N.D. Ill. 2007).

The built-in protections provided to the co-owner in § 363 are also weighed when analyzing detriment. Subsection 363(i) gives the non-filing spouse the right of first refusal where she may purchase the property at the price at which the sale is to be consummated. *In re Eden*, No. 01-02360, 2003 WL 23353959, at *1, *2 (Bankr. S.D. Ohio May 13, 2003) (clarifying the right of first refusal is not an automatic right to purchase the one-half interest at any time). In addition, courts factor in the co-owner's entitlement to half of the proceeds of the sale. *Bell*, 347 F. Supp.3d at 368; *In re Evans*, 527 B.R. 228, 240 (Bankr. E.D. Va. 2015) (arguing alternate housing can be obtained with the spouse's share of the sale proceeds).

Construing the evidence in a light most favorable to the non-moving parties, the Court holds that the Chapter 7 trustee has not met his burden of proof to authorize the sale of the non-filing spouse's interest in the property under § 363(h).

28

As noted earlier, the Chapter 7 trustee has failed to demonstrate that a proposed sale of the entire property will result in a meaningful distribution to unsecured creditors. While a sale of the entire property would potentially pay secured creditors in full, along with the administrative expenses of the Chapter 7 trustee and the Chapter 7 trustee's attorney, unsecured creditors would likely receive nothing. But without a sale, secured creditors would retain their liens, as well as the right to foreclose on the property at any time in the future. There also appears to be a substantial equity cushion that would adequately protect the existing secured creditors from any drop in the property's value. In short, the benefit to the estate would not outweigh the potential detriment to the non-filing spouse, who presumably would be forced from her residence of the past thirty or so years.

## Next Steps

Although the Court holds that the Chapter 7 trustee is not entitled to summary judgment, no other party has moved for summary judgment. The Court will therefore hold a status conference at **1:30 P.M. on September 28, 2021**, to consider what next steps would be appropriate, keeping in mind the aspirational goals of Bankruptcy Rule 1001 ("secur[ing] the just, speedy, and inexpensive determination of every case and proceeding").

29

In addition, the Court does not intend this opinion and related order to be a final appealable order within the meaning of 28 U.S.C. § 158(a)(1).  *See* Fed. R. Civ. P 54(b) (made applicable in bankruptcy proceedings under Fed. R. Bankr. P. 7054(a)); *see also Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S.Ct. at 589–90.

## CONCLUSION

For the reasons stated above, the Chapter 7 trustee's motion for summary judgment is denied.

IT IS SO ORDERED.

30